IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:18-cv-00484-BO

|  |  |  |
|---|---|---|
| EPIC GAMES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **PLAINTIFF'S RESPONSE TO** |
| | ) | **DEFENDANT LUCAS' MOTION TO** |
| BRANDON LUCAS and COLTON | ) | **DISMISS THE COMPLAINT** |
| CONTER, | ) | |
| | ) | |
| | ) | |
| LUCAS. | ) | |
| | ) | |

The Court should deny the Motion to Dismiss the Complaint filed by Brandon Lucas ("Lucas" or "Defendant") in the above-captioned action because it fails in both form and substance. Lucas' Motion is empty: it identifies no procedural basis or substantive support for why it should be granted. It does not state its grounds at all, let alone state them with the particularity required under Federal Rule of Civil Procedure 7(b)(1)(B). Lucas' Motion was not filed with an accompanying supporting memorandum as required by Local Civil Rule 7.1(b)(1). Instead, it was accompanied by a one-page, unsworn affidavit that is inadmissible for its only possible purpose, and contradicted by statements Lucas himself made in the DMCA counter notification which gave rise to this lawsuit, and which is attached as an exhibit to, and part of, the complaint.

Accordingly, Plaintiff Epic Games, Inc. ("Epic" or "Plaintiff") submits this Memorandum of Law along with the Affidavit of Christopher M. Thomas in support of its opposition to this motion, and respectfully requests that the Court deny Lucas' Motion to Dismiss and require him to answer the Complaint.

## I.  STATEMENT OF PERTINENT FACTS

### A.  Background on Epic and Fortnite

Founded in 1991, Epic is a Cary, North Carolina-based developer and publisher of video games and video game engine and content creation software. (D.E. 2 at ¶¶ 15, 18.) Epic first released its co-op survival and building action game, Fortnite®[1], on a limited basis in October 2013. (*Id.* at ¶ 19.) Fortnite was released more widely on July 25, 2017, and its free-to-play "Fortnite Battle Royale" was released on September 17, 2017. (*Id.* at ¶¶ 20-21.) Fortnite's popularity has grown steadily ever since and, with over 200 million users worldwide, has become Epic's most popular game yet. (*Id.*) In designing Fortnite, Epic made a conscious choice <u>not</u> to sell items that would give any player a competitive advantage in the game to ensure a fair playing field for all players. (*Id.* at ¶ 25.)

Epic is the author and owner of all rights, title, and interest in the copyrights in Fortnite, including, without limitation, the copyrights in Fortnite's underlying computer software and the audio visual works created by the software. (*Id.* at ¶ 29.) Epic's copyrights in various versions of Fortnite's computer code are the subjects of U.S. Copyright Registration Nos. TXu01-895-864 (dated December 18, 2013), TX008-186-254 (dated July 14, 2015), TX008-254-659 (dated March 3, 2016), and TX008-352-178 (dated December 23, 2016) and U.S. Copyright Reg. No. TX0008-507-210 (dated March 21, 2018). (*Id.* at ¶ 30, *id.* at Exh. A, [D.E. 2-4 ].)

### B.  Epic's Terms of Service and End-User Licensing Agreement

To use Epic's services, such as playing Fortnite on PC—which is the platform Lucas uses to play (and cheat at) Fortnite—a user must create an account with Epic. (*Id.* at ¶ 31.) In so doing, the user affirmatively acknowledges that he or she has "read and agree[d] to the Terms of

---

[1] Fortnite is a registered trademark of Epic and is shown with the federal registration symbol the first time the trademark appears herein and without it thereafter.

Service" ("Terms"). (*Id.*, at Exh. B, [D.E. 2-5].) Because Lucas has been using Epic's services, he necessarily agreed to abide by the Terms. (*Id.* at ¶¶ 31-35.) Further, Lucas has been banned from using Epic's services several times for cheating. (*Id.* at ¶¶ 9, 103.) Therefore, Lucas has created several user accounts and, each time, affirmatively acknowledged acceptance of the Terms. (*See id.* at ¶ 31.)

The Terms include an "Intellectually Property Rights" section which sets forth the permissions users have with respect to Epic's intellectual property and activities that are prohibited. (*Id.* at ¶¶ 31-46.) The prohibited activities include a prohibition against "copy[ing], modify[ing], creat[ing] derivative works of, publicly display[ing], publicly perform[ing,], republish[ing], or transmit[ting] any of the material obtained through [Epic's s]ervices" and "reproduce[ing], sell[ing], or exploit[ing] for any commercial purposes any part of [Epic's s]ervices, access to [Epic's s]ervices or use of [Epic's s]ervices or any services or materials available through [Epic's s]ervices." (*Id.* at ¶ 42.) The Terms also include a prohibition against using Epic's services for unlawful purposes. (*Id.* at ¶ 43.) Further, the Terms include a forum selection clause identifying federal courts in this District as the location for a lawsuit related to Fortnite. (*Id.* at ¶ 37.)

In order to play Fortnite on PC, a user must also acknowledge that he or she has read and agreed to abide by the terms in the Fortnite End-User License Agreement for PC (the "EULA"). (*Id.* at ¶¶ 47-59, *id.* at Exh. C, [D.E. 2-6].) Thus, because Lucas played Fortnite, he necessarily agreed to abide by the EULA. (*Id.* at ¶¶ 56-59.) Like the Terms, the EULA includes a section setting out prohibited activities. These prohibited activities include using Fortnite commercially or for a promotional purpose; copying, reproducing, distributing, displaying, or using Fortnite in a way that is not expressly authorized; selling, renting, leasing, licensing, distributing, or otherwise transferring Fortnite; reverse engineering, deriving source code from, modifying,

adapting, translating, decompiling, or disassembling Fortnite, or making derivative works based on Fortnite; creating, developing, distributing, or using any unauthorized software programs to gain an advantage in any online or other game modes, and behaving in a manner which is detrimental to the enjoyment of Fortnite by other users as intended by Epic. (*Id.* at ¶ 54.) The EULA also prohibits the transfer, sale, gift, exchange, trade, lease, sublicense, or renting of, among other things, in-game content. (*Id.* at ¶ 55.) Further, like the Terms, the EULA includes a forum selection clause identifying federal courts in this District as the proper forum for a lawsuit related to Fortnite. (*Id*. at ¶¶ 50-51.)

### C.    Lucas' Infringing Activities

Lucas used cheat software, which he calls "hacks," while playing Fortnite to unlawfully modify Fortnite's software so that he has an unfair competitive advantage over other players. (*Id.* at ¶¶ 60-69.) The cheat software works by injecting unauthorized code into Fortnite's copyrighted code, modifying and altering the copyrighted code, and creating an unauthorized derivative work of Epic's copyrighted Fortnite game, which infringes Epic's copyrights in the game. (*Id.* at ¶¶ 4, 99, 119.)

In addition to cheating and creating unauthorized derivative works of Epic's Fortnite code, Lucas demonstrated, advertised, distributed, and promoted Fortnite hacks to the public on YouTube, including on the YouTube channel he operates under the handle "Golden Modz." Between August 11 and September 18, 2018, Lucas used the Golden Modz channel to post nine videos of himself and others cheating while playing Fortnite. (*Id.* at ¶ 87, *id.* at Exh. K, [D.E. 2-14] (attaching screen prints of the infringing videos.) The video posted on September 18, 2018 showed both Lucas and Colton Conter, the other defendant named in the Complaint, using hacks to gain an unfair advantage over the 99 other players who were participating in the game. (*Id.*)

On or around September 18, 2018, Epic submitted Digital Millennium Copyright Act

4

("DMCA") takedown notices asking YouTube to remove Lucas' videos. (*Id.* at ¶ 92.) YouTube complied with Epic's request. (*Id.*)

On September 22, 2018, Lucas posted a video on his YouTube channel called "I am getting sued by fortnite…" (*Id.* at ¶ 94.) In this video, Lucas admitted that he posted videos of game play during which "hacks" were used to cheat at Fortnite. (*Id.*) In the description of this video, Lucas included links to his Instagram and Twitter accounts, and a link to his "backup" YouTube channel, which had no available content. On information and belief, Lucas intends to use this back-up channel if the Golden Modz Channel is disabled or removed. (*Id.*)

On September 26, 2018, Lucas submitted a counter-notification in response to Epic's DMCA takedown notices, claiming that the infringing videos "are *my own creation*" and that "All *I am doing* is uploading *my own funny youtube videos*":

> Display name of uploader: Golden Modz
>
> These videos are my own creation. They fall under the fair use policy on YouTube and if the videos are not placed back up on my channel, I will fill discriminated against. There are 1000's of people uploading Fortnite content to YouTube. All I am doing is uploading my own funny youtube videos. Please forward my counternotifications to the claimant. Thank you.

(*Id.* at ¶ 93; *id.* at Exh. L, [D.E. 2-15] at p.2) (emphasis added.)

At all times relevant to the Complaint, Lucas sold the hacks advertised in the YouTube videos on two websites: [<goldengodz.com>] (the "Golden Godz Website") and [<gtagods.com/shop>] (the "GTA Gods Website"). (D.E. 2 at ¶ 76, *id.* at Exh. D & Exh. E, [D.E. 2-7 & 2-8].) Lucas also operated a third website, [<www.goldenmodz.com>] (the "Golden Modz Website"), which linked to the Golden Godz Website. (*Id.* at ¶ 77.) These websites are collectively referred to hereinafter as the "Cheat Websites." The manner in which the Cheat Websites operate is explained in detail in the Complaint. (*Id.* at ¶¶ 105-114.) At a high level, at all times relevant to the Complaint, the Golden Godz and GTA Gods Websites were being used

to broker the purchase and sale of Fortnite accounts, and as a platform for the sale of "aimbots," a specific type of cheat software that enable those who use them to automatically target and kill enemies without having to aim their weapons. (*Id.* at ¶¶ 65 105-110.) At all times relevant to the Complaint, the Golden Modz Website redirected visitors to the Golden Godz Website. (*Id.* at ¶¶ 105-110.)

Lucas uses social media to raise his profile as a Fortnite "troll," to disseminate his videos, to promote his YouTube channel, and to help sell more hacks. (*Id.* at ¶¶ 95-98, Exhs. M-P, [D.E. 2-16, 2-17, 2-18].) At all times relevant to the Complaint, Lucas used his Twitter, Instagram, and Google+ accounts to promote his YouTube channel and the videos posted there. (*Id.*) Lucas even hosted a "giveaway," in which he Tweeted an image of an unlicensed, unauthorized "spiderman modded skin" and encouraged his Twitter followers to like and retweet in an effort to further disseminate his infringing content and sell more hacks. (*Id.* at ¶ 96.)

### D. Epic's Service of the Complaint and Lucas' Post-Filing Activity

On October 10, 2018, Epic filed this action. (D.E. 2 at ¶ 1.) On October 11, 2018, Epic sent the Civil Summons, Complaint, and related papers to Lucas for service at the Counter-Notification Address. (*See* Epic's Affidavit of Service [D.E. 9] at Exh. A, [D.E. 9-1].) Lucas was served on Monday, October 22, 2018. (*Id.* at ¶ 3, Exh. A, [D.E. 9-1].)

On November 13, 2018, the Court entered the "Motion to Dismiss the Complaint" that Lucas mailed to the Court. [D.E. 13.] Lucas' Motion does not state any grounds at all, let alone state grounds with the particularity required under Fed. R. Civ. P. 7(b)(1)(B). Moreover, the motion was not filed with an accompanying supporting memorandum, as required by Local Civil Rule 7.1. Instead, Lucas submitted a one-page, unsworn affidavit, in which Lucas appears to take the position that the case should be dismissed against him because "another entity, unrelated to [him]" is responsible for the unlawful acts identified in the complaint. (*See* Affidavit of Brandon

Lucas [D.E. 13-1] ("Lucas Aff.") ¶¶ 1-10, at 7.) Based on the foregoing, and because Lucas did not identify any of the other defenses available under Rule 12(b)(1)-(6), Epic's first response to Lucas' Motion is under Rule 12(b)(7)—failure to join a party under Rule 19.

## II.    LAW AND ARGUMENT

### A.    Fed. R. Civ. P. 12(b)(7) Standard

"A motion to dismiss for non-joinder is a drastic remedy. Courts of this circuit and, indeed, the federal courts in general, are reluctant to grant such a motion unless prejudice or inefficiency will certainly result absent dismissal." *Cellectis SA v. Precision Biosciences, Inc.*, No. 5:08-CV-119-H, 2009 WL 6319263, at *4 (E.D.N.C. Dec. 8, 2009)    (citing    *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir.1999)). "In general, dismissal is warranted only when the defect is serious and cannot be cured." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (3d ed. 2016).

When presented with a motion to dismiss under Fed. R. Civ. P. 12(b)(7), "the court initially must determine if it should join the absent person as a party under Fed. R. Civ. P. 19(a)." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008). The moving party bears the burden of proof to "demonstrate that the absent person must be joined to facilitate a just adjudication." (*Id.*) "To sufficiently assert a 12(b)(7) motion, ***the movant must identify the __name of the party__, the __location of the party__, the __reason the party is necessary__ and __whether the court has jurisdiction over the party__***." *Meta v. Target Corp.,* 74 F. Supp. 3d 858, 866 (N.D. Ohio 2015) (internal citations and quotations omitted) (emphasis added). A "Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action. In general, dismissal is warranted only when the defect is serious and cannot be cured." *Cooper v. Kliebert*, No. 15-751-SDD-RLB, 2016 WL 3892445, at *6 (M.D. La. July 18, 2016).

**B.      Lucas Has Not Met His Burden Under Fed. R. Civ. P. 12(b)(7)**

1.      *Lucas' Fed. R. Civ. P. 12(b)(7) Motion Should Be Denied Because It Does Not Meet the Requisite (or Prerequisite) Standards*

Lucas' Motion should be denied. Lucas has not "sufficiently asserted" a basis for dismissal under Rule 12(b)(7) because he has not even provided the prerequisite information identifying a party that he alleges is required or indispensable. *See Cooper*, 2016 WL 3892445, at *6 (denying defendants' motion to dismiss and holding that "[o]n the most fundamental level, defendants have failed to identify 'who' the indispensable party is."). Lucas' Motion also fails to provide a name or any sort of identifying information for the alleged missing party. Thus, it fails to meet the most fundamental requirements of motion practice in federal court, *see, e.g.*, Fed. R. Civ. P. 7(b)(1)(B) and Local Civil Rule 7.1, *supra*, and makes it impossible for Epic to substantively respond to the motion because there is no substantive information to which to respond.

Lucas' Motion should also be denied because, in addition to failing to provide the name of the party or its location, he has also not provided any basis under which the Court may exercise jurisdiction over this undisclosed party, or any reason it is necessary that such party be added. *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (affirming a district court's denial of a motion to dismiss because movant had "failed to proffer any explanation as to why he could not obtain complete relief against [the nonmovant] without the presence" of a particular party); *Meta,* 74 F. Supp. 3d at 866 (denying a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(7) because, although the movant had identified the party he alleged should be joined, it did "not explain the reason why [the party was] necessary, whether the Court [had] jurisdiction over [the party], the nature of [the party's] unprotected interests and

the possibility that [the party] will suffer injury, and whether the parties before the Court [would] be disadvantaged by [the party's] absence") (internal citations and quotations omitted).

Because Lucas has not met any of these threshold requirements, it is impossible to address the traditional two-step analysis as to whether joinder is required.[2] Lucas' Motion should be denied.

### 2. Lucas' Affidavit Baldly Alleges Facts Inconsistent With Epic's Allegations and Corroborating Evidence

Lucas' Motion should also be rejected because the statements in Lucas' unsworn affidavit are conclusory, unsupported by evidence, and undermined by Lucas' own prior statements, which are incorporated into the Complaint. For instance, Lucas' affidavit states that "[t]he videos posted on You Tube are not mine." (D.E. 13-1 at ¶ 1.) This statement is directly contradicted Lucas' earlier statements in his DMCA counter-notification that "[t]hese videos are ***my own creation***" and "All I am doing is uploading ***my own*** funny youtube videos." (D.E. 2, Exh. L, [D.E. 2-15]) (emphasis added.) Similarly, Lucas' statement that "I, Brandon Lucas, individually ***does [sic] not own the YouTube channel*** where the alleged advertisements and information were posted. (D.E. 13-1 at ¶ 2), is impossible to square with the claims in his counter-notification that the videos <u>are his</u> "***own creation[s]***", and that the channel <u>is his</u>. (*See* D.E. 2-15 at p.2) ("…if the videos are not placed back ***on my channel***, I will fill [sic] discriminated against").

---

[2] To determine whether a party should be joined, Fed. R. Civ. P. 19 first requires examination of whether "the party is 'necessary' to the action under [Fed. R. Civ. P.] 19(a)." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). Fed. R. Civ. P. 19(a)(1)(A) requires joinder when a court cannot provide the existing party complete relief, and Fed. R. Civ. P. 19(a)(1)(B) requires joinder where an absent person's interest would be "impair[ed] or impede[d]" or where the existing party would be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the [absent person's] interest." Fed. R. Civ. P. 19(a)(1)(B). If a court concludes that joinder is required, but not feasible, the court must then determine whether dismissal is appropriate because the absent person is "indispensable" under Fed. R. Civ. P. 19(b). *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008).

Finally, Lucas' conclusory statement that "[c]learly, the Plaintiff has named the wrong Defendant in this litigation" (Lucas Aff. at ¶ 10,) depends on his false premise that Epic's claims depend on Lucas owning the YouTube channel, the videos posted there, and/or the websites where the cheats are sold, (*id*. at ¶¶ 1-7.) None of these things is required for Epic to state a plausible claim. (*See* Sec. II.D.1-5, below.) Epic's First Claim for Relief, copyright infringement, alleges that Lucas violated Epic's exclusive rights to reproduce its copyrighted work in copies, prepare derivative works based on its copyrighted software, perform the work publicly, and display the work publicly. (*See* D.E. 2 at ¶¶ 115-132). Neither that claim, nor any of Epic's claims require ownership of anything other than the copyrights themselves—something Epic has alleged (and Lucas does not dispute). In short, nothing in Lucas' Motion or his affidavit provides a basis for granting his motion to dismiss based on the existence of some unidentified party.

Because a Fed. R. Civ. P. 12(b)(7) motion "will not be granted because of a vague possibility that persons who are not parties may have an interest in the action," and Lucas has failed to raise any argument suggesting that there is even a "vague possibility" that other parties are to be added, Lucas' Motion should be dismissed. *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (3d ed. 2016).

### C. Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 8

Although neither Lucas' Motion nor his affidavit assert that Epic failed to state a claim upon which relief can be granted, in an abundance of caution, Epic will respond as if it did in case the Court construes the motion as asserting a Rule 12(b)(6) defense.

"A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of the complaint." *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 514237, at *4 (E.D.N.C. Feb. 6, 2017), *motion to certify appeal denied,* No. 7:16-CV-18-D, 2017 WL 9440363 (E.D.N.C. May 24, 2017), *appeal dismissed,* No. 17-1291, 2017 WL 3973936 (4th Cir. June 7,

2017) (internal citations and quotations omitted). When ruling on such a motion "[t]he court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." (*Id.*) (internal citations and quotations omitted). The standard does not require "a court to accept as true a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." (*Id.*) (internal citations and quotations omitted).

To overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must meet the "simplified pleading standard" of Fed. R. Civ. P. 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," which has been interpreted to mean that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Patrick Collins, Inc. v. Does 1-22*, No. 11-CV-01772-AW, 2011 WL 5439005, at *2 (D. Md. Nov. 8, 2011) (internal citations and quotations omitted.) Furthermore, in its analysis of "a motion to dismiss, the court looks to the complaint and materials attached to or incorporated into the complaint." *Eshelman*, No. 7:16-CV-18-D, 2017 WL 514237, at *4 (internal citations and quotations omitted).

### D. Lucas' Motion Should be Denied Because All of Epic's Claims State a Claim Upon Which Relief Can Be Granted and Otherwise Meet the Pleading Standards of Rule 8

Lucas' Motion does not allege that Epic failed to state a claim upon which relief can be granted. (*See* D.E. 13.) Similarly, Lucas' affidavit, if considered, does not assert that any of the claims fail as a matter of law, or even that that there was no unlawful conduct. Instead, Lucas asserts only that someone other than Lucas engaged in unlawful conduct. Of course, that is not the standard under Rule 12(b)(6). As set forth below, all five of Epic's claims have been properly plead in accordance with all applicable rules, including Fed. R. Civ. P. 8, and state claims upon which relief can be granted. *Cf. Epic Games v. C.R.*, No. 5:17-CV-534-H, (E.D.N.C. July 12,

11

2018) (denying letter construed as motion to dismiss where defendant had not shown that the complaint failed to allege sufficient facts to state a claim for relief that is plausible and finding plaintiff's claims, which are similar to those asserted here, plausible on their face.)[3] Thus, Lucas' Motion should be denied.

### 1. Epic's Claim for Copyright Infringement States a Claim for Relief.

The essential elements of a claim for direct copyright infringement under the Copyright Act are:

> (1) the asserted work is an original work of authorship and copyrightable subject matter;
> (2) the plaintiff owns or has exclusive rights to all right, title, and interest in the work;
> (3) the Lucas's actions infringe plaintiff's copyrights in the asserted work by copying, reproducing, preparing derivative works from, and/or displaying the asserted work publicly without plaintiff's permission;
> (4) the Lucas's copies, reproductions, derivative works, and displays are identical and/or substantially similar to plaintiff's.

See *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002).

Epic alleged that it owns the copyrights in Fortnite's computer code and provided the supporting copyright registrations. (D.E. 2 at ¶¶ 29-30, 116-117; *id.* at Exh. A [D.E. 2-4].); *see Nelson-Salabes, Inc.*, 284 F.3d at 513 (proof of plaintiff's copyright registration certificates are sufficient to meet the first two elements of the test). Epic has also alleged that Lucas prepared derivative works of Fortnite without Epic's authorization, publicly displayed and/or publicly performed these works, and unlawfully distributed the derivative works for financial gain. (D.E. 2 at ¶¶ 100, 118-121, 125.) Further, Epic has alleged that the unauthorized derivative works are "substantially similar" to Epic's copyrighted Fortnite game. (*Id.*)

---

[3] Pursuant to Local Civil Rule 7.2(c), a copy of this order is attached hereto as <u>Exhibit A</u>.

Epic has also alleged that Lucas has had access to Fortnite and that he has used Epic's services, including Fortnite. (D.E. 2 at ¶¶ 4, 71.) Accordingly, since the facts are to be construed in the light most favorable to Epic in an analysis under Fed. R. Civ. P. 12(b)(6) and the complaint provides facts supporting each and every element such that Epic's allegation that Lucas infringed Epic's copyrights is, at minimum, plausible, Lucas' Motion should be denied. *See Malibu Media, LLC v. Doe,* No. CV TDC-15-3185, 2016 WL 4773127, at *1–2 (D. Md. Sept. 13, 2016 (denying a motion to dismiss a copyright infringement claim because plaintiff's Complaint "states a plausible claim for relief on its face."); *Patrick Collins, Inc. v. Does 1-22*, No. 11-CV-01772-AW, 2011 WL 5439005, at *2 (D. Md. Nov. 8, 2011) (internal citations and quotations omitted).

> ### 2. *Epic's Claim for Contributory Copyright Infringement States a Claim for Relief.*

The essential elements of a claim for contributory copyright infringement are that the Lucas (1) has knowledge of a third party's infringing activity; and (2) induces, causes, or materially contributes to the infringing conduct. *See Thomson v. HMC Grp., No.* CV1303273DMGVBKX, 2014 WL 12589313, at *5 (C.D. Cal. July 25, 2014). Epic's Complaint establishes the first element since it alleges that Lucas had actual knowledge that other cheaters were engaging in the same directly infringing activity as he by virtue of, without limitation, his involvement with the Cheat Websites. (D.E. 1 at ¶¶ 137-138.) Epic satisfied the second element by alleging that Lucas published the infringing videos demonstrating use of and promoting the cheat software and sold the cheat software on the Cheat Websites. (D.E. 2 at ¶¶ 133-136, 139-141.) The Complaint also alleges that Lucas' activities directly infringed Epic's Copyrights. (*See, supra*, Section II.D.1.)

Accordingly, since the facts are to be construed in the light most favorable to Epic and the Complaint provides facts supporting the plausibility of each and every element of Epic's contributory copyright infringement claim, Lucas' Motion should be denied. *See BottleHood, Inc. v. Bottle Mill*, No. 11-CV-2910-MMA MDD, 2012 WL 1416272, at *4 (S.D. Cal. Apr. 23, 2012) (denying a motion to dismiss a contributory copyright infringement claim because plaintiff adequately plead the claim); *Patrick Collins, Inc. v. Does 1-22*, No. 11-CV-01772-AW, 2011 WL 5439005, at *2 (D. Md. Nov. 8, 2011) (internal citations and quotations omitted).

### 3.  *Epic's Claim for Breach of Contract States a Claim for Relief.*

Epic's Complaint alleges both elements of a breach of contract claim: (1) the existence of a valid contract; and (2) subsequent breach of the contract's terms. *See Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 216, 768 S.E.2d 582, 590 (2015). Epic alleged that the Terms and EULA are valid, enforceable contracts between Epic and Lucas and that Lucas agreed to be bound to the Terms and the EULA by affirmative agreement, creating an account with Epic, and repeatedly using, downloading, playing and/or accessing Fortnite. (D.E. 2 at ¶¶ 150-157.) Epic has also alleged the second element because, as the Complaint states, Lucas has knowingly, intentionally, and materially breached the Terms and EULA by engaging in several explicitly prohibited activities set out in the Terms and the EULA. (D.E. 2 at ¶ 158.)

Since on a Rule 12(b)(6) motion, the facts are to be construed in the light most favorable to Epic and the Complaint provides facts that go to both elements of Epic's claim of breach of contract, Epic's allegations are, at minimum, plausible. Accordingly, Lucas' Motion should be denied. *See Fung Lin Wah Enterprises Ltd. v. E. Bay Imp. Co.*, 465 F. Supp. 2d 536, 542–43 (D.S.C. 2006) (denying the motion to dismiss because plaintiff pleaded the elements of a breach of contract claim). *Patrick Collins, Inc. v. Does 1-22*, No. 11-CV-01772-AW, 2011 WL 5439005, at *2 (D. Md. Nov. 8, 2011) (internal citations and quotations omitted).

4.   *Epic's Claim for Intentional Interference with Contractual Relations States a Claim for Relief.*

The essential elements of a claim for intentional interference with contractual relations are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person;
> (2) the Lucas knows of the contract;
> (3) the Lucas, without justification, intentionally induces the third person not to perform the contract;
> (4) resulting in actual damage to the plaintiff.

*Red Arrow v. Pine Lake Preparatory, Inc. Bd. of Directors*, 226 N.C. App. 431, 741 S.E.2d 511 (2013).

Epic's Complaint alleges that valid and enforceable contracts exist between Epic and users of its services, including Lucas. (*See also* D.E. 2 at ¶¶ 160-167.) Epic further alleged that Lucas knew of the terms of those agreements and knew that other users of Epic's services are required to agree to abide by the Terms and the EULA because Lucas entered into exactly the same contracts multiple times. (*Id.* at ¶ 168-169.) The Terms and the EULA explicitly list activities that users of Epic's services are prohibited from engaging in. Epic alleged that Lucas' intentional, active, and willful encouragement and inducement of Fortnite players to use the cheats constitutes intentional interference with contracts formed between Epic and those players, that Lucas acted without justification, and that Lucas' actions resulted in actual damage to Epic. (*Id.* at ¶¶ 169-174.)

Since the facts are to be construed in the light most favorable to Epic, and the Complaint provides facts supporting all the elements of Epic's claim for intentional interference with contractual relations, Epic's allegations are, at minimum, plausible. Accordingly, Lucas' Motion should be denied. *See Anderson v. Dobson,* No. 1:06CV2, 2006 WL 1431667, at *9 (W.D.N.C. May 22, 2006) (denying defendant's motion to dismiss because plaintiff pleaded the elements of

an intentional interference with contractual relations claim); *Patrick Collins, Inc. v. Does 1-22*, No. 11-CV-01772-AW, 2011 WL 5439005, at *2 (D. Md. Nov. 8, 2011) (internal citations and quotations omitted).

> 5. *Epic's Claim for Violation of Unfair and Deceptive Trade Practices Under North Carolina Law States a Claim for Relief.*

The essential elements of a claim for unfair and deceptive trade practices under North Carolina General Statutes § 75–1.1 require the plaintiff to show that the defendant committed an unfair or deceptive act that affected commerce and that proximately injured the plaintiff. *Pleasant Valley Promenade v. Lechmere*, Inc., 120 N.C.App. 650, 464 S.E.2d 47 (1995).

Epic's Complaint alleges these elements in that it alleges that Lucas' intentional, continued interference with contracts as discussed above, along with his other unfair methods of competition, are unfair or deceptive acts that affect United States and North Carolina commerce. (D.E. 2 at ¶¶ 175-181.) Epic also alleges that Lucas' actions were the direct and proximate cause of harm to Epic. (D.E. 2 at ¶¶ 182-184.)

Since the facts are to be construed in the light most favorable to Epic and the Complaint provides facts supporting all the elements of Epic's claim for intentional interference with contractual relations, Epic's allegations are, at minimum, plausible. Accordingly, Lucas' Motion should be denied. *Patrick Collins, Inc. v. Does 1-22*, No. 11-CV-01772-AW, 2011 WL 5439005, at *2 (D. Md. Nov. 8, 2011) (internal citations and quotations omitted).

**E.     If the Court Construes Lucas' Motion as a Rule 12(b)(6) Motion, the Court Should Decline To Convert Lucas' Motion Into a Motion Under Rule 56 Because Lucas' Affidavit Should be Excluded by the Court as Inadmissible Since It Is Unsworn and Does Not Comply with Fed. R. Civ. P. 56(e) or 28 U.S.C. § 1746.**

Rule 12(d) provides that if, "on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

16

summary judgment under Rule 56." *Id.* Lucas' affidavit is not sworn, and its contents are not verified to be true and correct or made under penalty of perjury. (*See* Lucas Aff. [D.E. 31-1].) "Unsworn pleadings do not satisfy Rule 56(e)'s requirements for summary judgment proof." *Metropolitan Life Ins. Co. v. Hall*, 9 F.Supp.2d 560, 561 (D.Md. 1998). 28 U.S.C. § 1746 provides a statutory exception to this rule for unsworn declarations made "under penalty of perjury" and verified as "true and correct" in compliance with the statute. *See id.* Lucas' affidavit is not in substantial conformity with either of these rules because, as drafted, it allows Lucas to circumvent the penalties for perjury in signing onto intentional falsehoods. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–07 (5th Cir. 1988). The mere fact that the affidavit was notarized does not transform it into an affidavit that may be used for summary judgment purposes. *See Watson v. Spilman*, No. 3:13CV746, 2014 WL 3867550, at *2 (E.D. Va. Aug. 5, 2014) (citing *Nissholwai Am. Corp.*, 845 F.2d at 1306–07). Lucas' affidavit should be excluded because it is not admissible for summary judgment purposes. *Id.* (finding submissions failed to constitute admissible summary judgment evidence where the contents were neither sworn nor made under penalty of perjury) (citing *United States v. White*, 366 F.3d 291, 300 (4th Cir.2004)). Consequently, if the Court construes Lucas' Motion as being made under Rule 12(b)(6) and, pursuant to Rule 12(d), converts the motion to one for summary judgment under Rule 56, it should exclude the affidavit as inadmissible evidence and deny Lucas' Motion.

**F.      If the Court Construes Lucas' Motion as a Rule 12(b)(6) Motion, the Court Should Decline to Convert the Motion Into a Rule 56 Motion, or Deny a Rule 56 Motion As Premature.**

Alternatively, if the Court decides not to exclude Lucas' unsworn affidavit, the Court should decline to consider it at this stage because it is too early in this case for a summary judgment motion. The affidavit is outside the pleadings. As stated, in order to consider the affidavit in the context of a Rule 12(b)(6) motion, the Court would have to convert the motion to

dismiss into a motion for summary judgment, and "such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *Johnson v. Mabus*, No. CV 2:16-2073-RMG, 2017 WL 3037373, at *3 (D.S.C. July 18, 2017) (citing *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)). "[S]ummary judgment should not be granted where, as here, the nonmoving party has not had the opportunity to discover information that is essential to his opposition to the motion." *5050 Tuxedo, LLC v. Neal*, No. GJH-16-1849, 2017 WL 935877, at *3 (D. Md. Mar. 8, 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5. (1987)).

Epic has not had the opportunity to engage in any discovery at all on any topics, including those relevant to an opposition to a motion for summary judgment. (*See* Thomas Aff. at ¶¶ 1-6.) Indeed, the scheduling conference has not yet occurred. The issues have not yet joined. Epic has not had the opportunity to request documents, submit interrogatories, or cross examine witnesses. (*Id.*) Accordingly, the Court should decline to consider the affidavit or deny the motion for summary judgment as premature. *See Johnson v. Mabus*, No. CV 2:16-2073-RMG-KFM, 2017 WL 9250334, at *5 (D.S.C. June 1, 2017*), report and recommendation adopted*, No. CV 2:16-2073-RMG, 2017 WL 3037373 (D.S.C. July 18, 2017) (finding a Rule 12(b)(6) motion to dismiss may not be converted to a summary judgment motion if the nonmoving party has not had a reasonable opportunity for discovery, which was the case where a scheduling order had not yet been entered and the plaintiff has not had the opportunity to engage in any discovery.)

Because motions for summary judgment rely on additional, outside evidence—as opposed motions to dismiss, which are decided solely on the pleadings—sufficient notice of the conversion is critical in order to "ensure[ ] that the opposing parties will bring genuine issues of material fact to the trial court's attention by affording the nonmoving party an opportunity to

PPAB 4572541v6

marshal its resources and rebut the motion for summary judgment with every factual and legal argument available." *Staten v. Tekelec*, No. 5:09-CV-434-FL, 2010 WL 3835127, at *3 (E.D.N.C. Aug. 10, 2010), *report and recommendation adopted*, No. 5:09-CV-434-FL, 2010 WL 3835124 (E.D.N.C. Sept. 28, 2010).

Thus, "[b]efore a court may properly convert a motion to dismiss to a motion for summary judgment, . . . the court must provide all parties reasonable notice and the opportunity to present any additional matter pertinent by the conversion." *Staten v. Tekelec*, No. 5:09-CV-434-FL, 2010 WL 3835127, at *3 (E.D.N.C. Aug. 10, 2010), *report and recommendation adopted*, No. 5:09-CV-434-FL, 2010 WL 3835124 (E.D.N.C. Sept. 28, 2010). "Reasonable opportunity" requires that the court give some indication to the parties that it treating the motion to dismiss as a motion for summary judgment "with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Johnson v. RAC Corp.,* 491 F.2d 510, 513 (4th Cir. 1974).

Should the nonmoving party feel that a motion for summary judgment is premature, it can invoke Fed. R. Civ. P. 56(d), which provides that a court may defer, deny, allow time to obtain additional evidence, or issue any other appropriate order "[i]f a nonmovant shows by affidavit or declaration, that for specified reasons, it cannot present facts essential to justify its opposition." *5050 Tuxedo, LLC v. Neal*, No. GJH-16-1849, 2017 WL 935877, at *3 (D. Md. Mar. 8, 2017) (citing Fed. R. Civ. P. 56(d)).

Accordingly, counsel for Epic has submitted an affidavit contemporaneously with the filing of this brief, invoking Fed. R. Civ. P. 56(d) in the event that the Court converts Lucas' Motion to dismiss into one of summary judgment. The affidavit states that Epic has not had the opportunity to discovery any information that it could use in opposition to a motion for summary judgment, (*see* Thomas Aff. at ¶¶ 6-9), and is applicable only if the Court construes Lucas'

Motion as a motion for summary judgment.

## III.   <u>CONCLUSION</u>

For all of the foregoing reasons, Epic respectfully requests that this Court deny Lucas'

Motion to Dismiss and order Lucas to answer Epic's Complaint within a reasonable amount of

time.

<u>/s/Christopher M. Thomas</u>
N.C. Bar No. 31834
christhomas@parkerpoe.com
Tasneem A. Dharamsi
N.C. Bar No. 47697
tasneemdelphry@parkerpoe.com
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT LUCAS' MOTION TO DISMISS THE COMPLAINT** was electronically filed on this day with the Clerk of Court using the CM/ECF system and a true and accurate copy was sent by US Mail addressed to the following:

> Brandon Lucas
> 11211 South Military Trail
> Apt. #5021
> Boynton Beach, FL 33436
> juniorolympicgold@gmail.com
> *Defendant, pro se*
>
> Justin Eldreth
> Klish & Eldreth PLLC
> 115 S Saint Marys St Ste C
> Raleigh, NC 27603
> Email: justin@klisheldreth.com
> *Attorney for Defendant Colton Conter*

This <u>3rd</u> day of December, 2018.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/Christopher M. Thomas
Christopher M. Thomas
N.C. Bar No. 31834
christhomas@parkerpoe.com
Tasneem A. Dharamsi
N.C. Bar No. 47697
tasneemdelphry@parkerpoe.com
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564
*Attorneys for Plaintiff*

PPAB 4572541v6