IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:18-cv-484-BO

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRANDON LUCAS, <br><br> Defendant. | **REPORT OF THE PARTIES' PLANNING MEETING** <br> Fed. R. Civ. P. 26(f) |

## REPORT OF THE PARTIES' PLANNING MEETING

1. The following persons participated in a Rule 26(f) conference on January 16th, 2018 by telephone:

    Christopher M. Thomas, representing Epic Games, Inc.

    Brandon Lucas appearing *pro se*.

    Joseph Lucas, Brandon's Father.

2. Initial Disclosures: The parties will complete the initial disclosures required by Rule 26(a)(1) by **February 8, 2019**. The parties agree that supplemental disclosures under Fed. R. Civ. P. 26(e) will be made promptly after the receipt of information by the party or counsel and, in any event, no later than the completion of fact discovery, unless good reason can be shown why such information was not available.

3. Discovery Plan. The parties propose this discovery plan:

    (a) Scope of Discovery: Discovery will be needed on these subjects:

    **Plaintiff Epic Games, Inc.**'s intends to seek discovery into:

Its claims against Defendant Brandon Lucas for (i) direct and (ii) contributory copyright infringement in violation of the Copyright Act; (iii) breach of contract in violation of North Carolina law; (iv) intentional interference with contractual relations in violation of North Carolina law; and (v) unfair and deceptive trade practices and unfair methods of competition in violation of the North Carolina Unfair and Deceptive Trade Practices Act. This discovery will include, without limitation:

- Defendant's use of cheat software;
- Defendant's promotion of cheat software;
- the use of cheat software in videos copied, published, displayed, performed and/or distributed by Defendant;
- the ownership, operation, and control of the YouTube channel(s) where Defendant published, displayed, performed and/or distributed videos, including, without limitation, "the Golden Modz Channel";
- the ownership, operation, and control of the various other social media platforms used by Defendant in connection with his business, including, without limitation, Twitter, Instagram, and Google+ accounts;
- the creation, ownership, operation, and control of the YouTube videos copied, published, displayed, performed and/or distributed by Defendant;
- the creation, ownership, operation, and control of other material copied, published, displayed, performed and/or distributed by Defendant;
- the ownership, operation, and control of the website to which <www.goldengodz.com> resolved (the "Golden Godz Website") at the time the complaint was filed;

2
PPAB 4674671v1
Case 5:18-cv-00484-BO   Document 25   Filed 02/15/19   Page 2 of 13

- the ownership, operation, and control of the website to which <gtagods.com/shop> resolved (the "GTA Gods Website") at the time the complaint was filed;
- the identities of the participants in the YouTube videos published by Defendant;
- Defendant's income related to his social media platforms, videos, and promotion of products and services;
- contractual agreements related to Defendant's social media platforms, videos, and promotion of products and services;
- Defendant's promotion of himself, his YouTube videos, his social media presence, and third party products and services;
- The "spiderman modded skin"; and
- The sale of Fortnite accounts on the Golden Godz Website

**Defendant Brandon Lucas** intends to seek discovery into:

- Sales by month dating back to the inception of Fortnite
- Net Profits by month dating back to the inception of Fortnite including contractual agreements, partnerships with third party companies, investors in Fortnite/Epic games, sponsorships with third party companies.
- unique players monthly dating back to the inception of Fortnite
- maximum concurrent players daily/monthly/lifetime dating back to the inception of Fortnite
- Hours played by every individual daily/monthly/lifetime dating back to the inception of Fortnite
- Contractual agreements related to all content creators including messages

involving talk of coming to a contractual agreement between epic games/fortnite and content creators

- All Cease and Desist letters sent out to other content creators on YouTube and all other social media creators
- the ownership, operation, and control of all social medias that may contain messages to other content creators that have come to contractual agreements with the plaintiff, including and not limited to all Fortnite/epic games-owned youtube channels, instagrams, twitter accounts, and google + accounts
- plaintiff's income related to their social media platforms, videos, and promotion of products and services.

(b) <u>Deadline for Discovery</u>: The parties agree that all discovery will be completed <u>within six (6) months of the date the Scheduling Order entered pursuant to Fed. R. Civ. P. 16</u>. The parties agree to schedule their discovery in such a way as to require all responses to discovery to be served prior to the cut-off date, and to file any motions relating to discovery within the discovery period unless it is impossible or impractical to do so.

(c) <u>Interrogatories</u>: The parties agree to be limited to twenty-five (25) written interrogatories, including all discrete subparts, under Fed. R. Civ. P. 33. Answers to written interrogatories shall be due thirty (30) days after service unless an extension is granted by the serving party. Supplementary responses to written interrogatories will be made promptly after the receipt of information by the party

or counsel and, in any event, no later than the completion of fact discovery, unless good reason can be shown why such information was not available.

(d) Requests for Admission: The parties agree to be limited to twenty-five (25) requests for admission, including all discrete subparts, under Fed. R. Civ. P. 36. Answers to requests for admission shall be due thirty (30) days after service unless an extension is granted by the serving party. Supplementary responses to requests for admission will be made promptly after the receipt of information by the party or counsel and, in any event, no later than the completion of fact discovery, unless good reason can be shown why such information was not available.

(e) Depositions: The parties agree to be limited to seven (7) depositions each by plaintiff and by defendant, without leave of court under Fed. R. Civ. P. 30. Unless otherwise stipulated or ordered, depositions are limited to one (1) day of seven (7) hours.

(f) Document Production:

(1.) The parties agree that unless otherwise noted below, the scope of discovery will be governed by Fed. R. Civ. P. 26, and each party will search for responsive documents in the location(s) where they are believed to reside. The producing party shall not be required to search for additional copies of such responsive documents that may be located elsewhere absent a showing of good cause that the production of such additional copies is necessary.

(i.) The parties agree that materials retained primarily for back-up or disaster recovery purposes such as tape, optical disk, or similar formats are deemed not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) and therefore, not subject to production unless specific facts demonstrate a particular need for such evidence that justifies the burden of

5
PPAB 4674671v1
Case 5:18-cv-00484-BO   Document 25   Filed 02/15/19   Page 5 of 13

retrieval.

(ii.) The parties agree that voicemail messages, random access memory, instant messages and chats, text messages, information from mobile phones, smart phones or PDAs, and dynamic fields of databases or log files, and communications sent and received using third party social media platforms need not be searched and will not be subject to production absent a specific request by the requesting party based upon specific facts that demonstrate a particular need for such evidence from specific document custodians that justifies the burden of search and retrieval.

(iii.) The parties agree that general ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests. Email production requests shall only be propounded for specific issues, rather than general discovery. A party may request email discovery by propounding specific email production requests. Email production requests shall identify the custodian, search terms, and time frame, and be subject to the other terms of this provision. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

(iv.) The parties shall limit their email production requests to a total of ten (10) search terms per custodian who is not a named party. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens

the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.

(v.) The producing party will conduct a search of each identified custodian's emails (sent and received) using the corresponding search terms. If the producing party believes, in good-faith, that a search will result in overproduction from a custodian (that is, if a substantial number of hits captured by the search are not relevant to any claim or defense), the producing party will provide to the receiving party a datasheet showing the number of documents from said custodian captured by the search ("hits"). The receiving party shall then identify a narrower set of search terms that the producing party will use to search the custodian's emails. The producing party shall then produce to the receiving party the documents captured by the selected search after review for privilege and relevance in a manner consistent with this Report. The parties reserve their respective rights to assert the attorney-client privilege, work product and/or other discovery privilege or immunity with respect to any such production. Any emails or email attachments withheld on the basis of attorney-client privilege, work product and/or other privilege or discovery immunity must be logged in accordance with Rule 26.

(vi.) Once the producing party has identified and produced a particular email, the producing party is not required to search for or produce additional copies of such responsive email that may be in the possession of other employees of the producing party absent a showing of good cause that the production of such additional copies is necessary. In the event email discovery is specifically requested according to this procedure and a dispute between the parties arises, the parties will work in good faith to resolve the matter but reserve their rights to oppose any such requests and/or seek an appropriate protective order or other relief where appropriate.

(2) The parties have discussed the format for the production of electronically stored information (*e.g.*, Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (*e.g.*, USB drive), and the inclusion or exclusion and use of metadata, and have agreed as follows:

(i.) <u>In General.</u> All documents produced in this case will be produced initially in PDF format. Either party may request the production of native files and/or metadata for certain documents by propounding specific production requests for those documents, propounded for specific issues, rather than general discovery.

(ii.) <u>Natives.</u> Produced native files shall be assigned a production bates number. Any attachments to parent emails shall be extracted as individual files and sequentially numbered, so that the attachments appear directly after the parent email. The production bates number shall replace the original file name (*e.g.*, ABC000001.xls) provided that the original file name is included in the metadata (".DAT") file. A separate field shall be included in the metadata (".DAT") file or as a separate cross reference (".DAT") file, containing the relative path of the native file. The native file name may reflect any designation of confidentiality (*e.g.*, ABC000001_Highly Confidential.xls) or the designations can be provided as a separate metadata field.

(iii.) <u>Metadata for emails.</u> The metadata for emails shall be produced in a delimited text file format with Concordance (".DAT") default delimiters using ASCII characters 020 (*e.g.*, Comma), 254 (*e.g.*, Quote) and 174 (*e.g.*, Newline). Date fields shall be provided in mm/dd/yyyy format and shall not contain invalid or zero filled dates. The first line of the delimited text file must be a header row identifying the following field names (preferred field names in parenthesis):

1. Begin Document Number (BegDoc) – Beginning bates number of a document
2. End Document Number (EndDoc) – Ending bates number of a document
3. Begin Attachment Number (BegAttach) – Beginning bates number of the attachment family
4. End Attachment Number (EndAttach) – Ending bates number of the attachment family
5. Custodian Name (Custodian) - Name of person from whom the file was obtained
6. All Custodians (All Custodians) – Name of person(s) who had copies of the same file
7. Document Class (Doc Class) – Indicates document type, *i.e.*, Email, Edoc, Attachment or Hard Copy
8. Primary Date Time (Sort Date Time) – Date and time date of the top-level parent document taken from Email Sent Date Time, Email Received Date Time, or Last Modified Date in the order of precedence
9. Application Type (Application Type) – Type of native file or name of application associated with the document
10. Email From (From) – Name of person sending an email
11. Email To (To) – Name(s) of person(s) receiving email
12. Email CC (CC) – Names of persons carbon copied on an email
13. Email BCC (BCC) – Names of persons blind copied on an email
14. Email Subject (Subject) – Subject line of an email
15. Attachment Name (Attachment List) – The attachment file names of the children associated with the document
16. Email Sent Date Time (Sent Date Time) – Date and time email was sent
17. Email Received Date Time (Received Date Time) – Date and time email was received
18. Original File Path (File Path) – Path and file name of the original native file
19. File Name (File Name) – Name of the original native file
20. File Extension (File Extension) – The file extension of the original native file
21. File Size (File Size) – Size of the file in bytes
22. Hash Code (Hash) – Identifying MD5 or SHA hash value of an electronic record
23. Processing Time Zone (Time Zone) – Time zone utilized by processing application to extract date and time values
24. Confidentiality Designation (Designation) – Confidentiality designation of a document
25. Text File Path (Text Path) – Relative path to the text file
26. Native File Path (Native Path) - Relative path to the native file

(iv.) <u>Metadata for non-email electronic documents.</u> The fields to be produced for non-email electronic documents and scanned hard copy documents are as follows (preferred field names in parenthesis):

1. Begin Document Number (BegDoc) – Beginning bates number of a document
2. End Document Number (EndDoc) – Ending bates number of a document
3. Begin Attachment Number (BegAttach) – Beginning bates number of the attachment family
4. End Attachment Number (EndAttach) – Ending bates number of the attachment family
5. Custodian Name (Custodian) - Name of person from whom the file was obtained
6. All Custodians (All Custodians) – Name of person(s) who had copies of the same file
7. Primary Date Time (Sort Date Time) – Date and time date of the top-level parent document taken from Email Sent Date Time, Email Received Date Time, or Last Modified Date in the order of precedence
8. Document Class (Doc Class) – Indicates document type, *i.e.*, Email, Edoc, Attachment or Hard Copy
9. Application Type (Application Type) – Type of native file or name of application associated with the document
10. Document Author (Meta Author) – The metadata author of the original native file
11. Document Title (Meta Title) – The metadata title of the original native file
12. Created Date Time (Created Date Time) – Date and time document was created
13. Modified Date Time (Last Modified Date Time) – Date and time document was last modified
14. Original File Path (File Path) – Path and file name of the original native file
15. File Name (File Name) – Name of the original native file
16. File Extension (File Extension) – The file extension of the original native file
17. File Size (File Size) – Size of the file in bytes
18. Hash Code (Hash) – Identifying MD5 or SHA hash value of an electronic record
19. Processing Time Zone (Time Zone) – Time zone utilized by processing application to extract date and time values
20. Has Hidden Data (Hidden Data) – Indicates existence of hidden content stored in a document
21. Confidentiality Designation (Designation) – Confidentiality designation of a document
22. Text File Path (TextPath) – Relative path to the text file
23. Native File Path (Doclink) - Relative path to the native file

(v.) <u>Email Threading</u>. The producing party may choose to use software to identify and produce only inclusive emails, including any unique attachments from non-inclusive emails. If the inclusive email is determined to be privileged, the producing party must review the non-inclusive emails from that email thread for privilege and the non-privileged emails and attachments must be produced.

(vi.) <u>Extracted Text.</u> Extracted text shall be provided in a separate folder as a document-level text (".TXT") files for all documents that originate in electronic format. Any document in which text cannot be extracted will have Optical Character Recognition ("OCR") performed and provided in document-level format. The name of the text file shall be the same as the document's production bates number with a .TXT extension (*e.g.*, ABC000001.txt). A separate field shall be included in the metadata (".DAT") file containing the current relative path of the text file or as a separate cross reference (".DAT") file.

(vii.) <u>Transmittal</u>. All documents shall be produced on a digital media that corresponds to the size of the data set (*i.e.*, CD-ROM, DVD-ROM, flash drive, external hard drive, etc.). Other means of transmittal can be used if agreed upon in advance by the parties (*i.e.*, secure ftp transfer or other encrypted and secure means of electronic transmittal).

(viii.) <u>Hard Copy Documents.</u> The parties agree to each produce electronic copies of logically unitized hard copy documents as they are kept in the ordinary course of business. Color pages shall be provided in a Joint Photographic Experts Group format (".JPG"). Each page of a document shall be consecutively numbered and endorsed ("burned in") with a unique bates number onto each image.

(g) <u>Protective Order</u>: The parties anticipate this case will involve the discovery of confidential commercial information and therefore intend to exchange a proposed

Protective Order by **February 8, 2019** to address the parties' respective claims of confidentiality and trade secrets with respect to documents and information that they anticipate will be sought by way of discovery.

4. Other Items:

    (a) Scheduling Conference: The parties do not request a scheduling conference.

    (b) Pretrial conference: The parties agree that any pre-trial conference be held seven (7) days before trial.

    (c) Deadline to Amend: The parties agree that the deadline to amend pleadings and join additional parties without seeking leave of Court within four (4) months of the date the Scheduling Order entered pursuant to Fed. R. Civ. P. 16

    (d) Dispositive motions: The parties agree that the deadline to file dispositive motions is within two (2) months of the close of discovery.

    (e) Settlement and Mediation: The parties have initiated settlement discussions. Should settlement discussions fail, the parties are willing to discuss mediation.

    (f) Pretrial Disclosures: The parties agree that pretrial disclosures shall be made thirty (30) days before trial per Rule 26(a)(3)(B).

    (g) Pretrial Objections: The parties agree that objections under Rule 26(a)(3) shall be made fourteen (14) days after the pretrial disclosures are filed per Rule 26(a)(3)(B).

    (h) Trial: The parties agree that trial shall be sixty (60) days after ruling on dispositive motions, and anticipate the trial will take no more than four (4) days.

Christopher M. Thomas
N.C. Bar No. 31834
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400
P.O. Box 389
Raleigh, NC 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564
christhomas@parkerpoe.com

Date: February 8th, 2018

*Brandon Lucas* (signature)

Brandon Lucas
Address – 11211 South Military Trail, apt 5021,
Boynton Beach Florida, 33436
Phone No. 561-293-9006